**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LAVETTA STEVESON**                                                                                    **PLAINTIFF**

**v.**                                        **Case No. 4:20-cv-01357-LPR**

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                               **DEFENDANT**


**MEMORANDUM BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This Memorandum Brief is submitted in support of the Motion for Summary Judgment ("Motion") filed by Defendant, Pulaski County Special School District ("PCSSD" or "District"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.   For the reasons discussed herein, the District is entitled to summary judgment as a matter of law.

## I.        INTRODUCTION AND FACTUAL BACKGROUND

This is an employment discrimination case where Plaintiff alleges she was terminated on the basis of her sex (pregnancy), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), which includes pregnancy as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.; and the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101.   *See* Compl., ECF Doc. No. 1 at 5-6.   Plaintiff filed the operative Charge of Discrimination with the Equal Employment Opportunity Commission on June 12, 2019 and filed her Complaint on November 17, 2020.   *See* EEOC Charge of Discrimination, attached to District's Motion as Exhibit 1.

Plaintiff began working for the District on September 12, 2018, as a temporary security officer in the District's Security Department.   *See* Support Staff Personnel Recommendation Form for Temporary Security Guard, attached to District's Motion as Exhibit 2.   Plaintiff worked

for PCSSD for approximately six months: from September 12, 2018 until her last date of work, February 25, 2019.   *See* Note from PCSSD HR Department, attached to District's Motion as Exhibit 3.   As a temporary employee, Plaintiff only received pay for hours worked, with no benefits provided or permanent position; she was "at will" and only worked when needed.   *See* Deposition of PCSSD Corporate Representative, Shawn Burgess, pp. 30, 46-48, attached to Defendant's Motion as Exhibit 4.   Plaintiff was never terminated from PCSSD.   However, she stopped coming to work, and thereafter her temporary services were no longer needed.   She remains eligible to work for PCSSD.   *See* Ex. 4, PCSSD Corporate Rep Depo, at pp. 46-47 and 50 and Affidavit of Shawn Burgess, attached to the District's Motion as Exhibit 5.

On February 25, 2019, Plaintiff began missing work without prior notification to PCSSD. *See* Ex. 5 at ¶ 4.   Plaintiff did not work any hours after February 25, 2019.   *Id*. at ¶ 6 and Plaintiff's Time Records, attached as Exhibit 6 to the District's Motion.   PCSSD did not hear from Plaintiff until March 4, 2019, a full week (five workdays) from the last day she had reported to work, when Plaintiff sent her direct supervisor, Tracy Bunting, a text message with a doctor's note included.   *See* Text Message Exchanges between Plaintiff and Bunting, produced in discovery by Plaintiff, attached to the District's Motion as Exhibit 7.   The text messages were the first contact Plaintiff made with PCSSD after her extended "no-call/no-show."

Plaintiff's doctor's note stated that she was on "complete bedrest" from March 4, 2019 until her next appointment on March 11, 2019; at her March 11th appointment, her "complete bedrest" was extended until March 18, 2019.   *See* Plaintiff's Medical Notes, attached to the District's Motion as Exhibit 8.   By this time, PCSSD had already considered Plaintiff to have quit her job when she did not appear for work or otherwise provide a reason or notice for her nonappearance the week prior.   *See* Ex. 5 (affidavit) and Ex. 3.   To date, Plaintiff is not on any

"no hire" list at PCSSD and is eligible for rehire if a temporary position becomes available.   *Id.* at ¶ 7.

Plaintiff alleges she returned to work on March 25, 2022 when released by her doctor, and that on that day she was terminated on the spot and told she was a "liability."   *See* Complaint at ¶ 69.   This allegation is not supported by the uncontroverted evidence, which clearly shows Plaintiff did not work after February 25, 2019, did not notify her supervisors she would not be reporting to work, and did not provide medical documentation explaining her absence until one week after her last day of work.   Plaintiff only provided medical documentation after PCSSD had determined it no longer needed her employment services because of her failure to report to work.

The District adamantly denies that Plaintiff was discriminated against in violation of Title VII of the Civil Rights Act of 1964, or the Americans with Disabilities Act of 1990.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is not entitled to recover under any discernable circumstances.   *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts.").   The non-moving party may not

rest on mere allegations or denials of his pleading but must come forward with specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 401 (8th Cir. 1995).

## III.   ARGUMENT AND AUTHORITY

### A. PCSSD Did Not Discriminate Against Plaintiff in Violation of Title VII or ACRA When It No Longer Requested Her Employment Services

#### 1.   Title VII and ACRA Standard

In 1964, Congress enacted Title VII of the Civil Rights Act in an effort to eliminate disparate treatment of men and women in the workplace. *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006). Title VII works to prohibit unlawful discrimination and retaliation practices by employers in the workplace. 42 U.S.C. § 2000e2(a). Title VII discrimination claims are analyzed under the familiar burden-shifting framework set out in the *McDonnell Douglas* line of cases. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 2746-48, 125 L. Ed. 2d 407 (1993); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 713-715, 103 S. Ct. 1478, 1480-82, 75 L. Ed. 2d 403 (1983); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-256, 101 S. Ct. 1089, 1093-95, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).

A case alleging a Title VII violation moves through three phases. *McCosh v. City of Grand Forks*, 628 F.2d 1058, 1062 (8th Cir. 1980). "First, the Plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs*, 450 U.S. at 252-53. A plaintiff may carry this burden in one of two ways: (1) by

offering direct evidence of the alleged discriminatory motive or action; or (2) by producing sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)). If a plaintiff is unable to present direct evidence of an employer's alleged discriminatory behavior, she can raise an inference of such conduct using the framework articulated in *McDonnell Douglas*. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253.

We apply the burden-shifting *McDonnell Douglas* framework to Plaintiff's Title VII pregnancy discrimination. *Piantanida v. Wyman Center, Inc., 116 F.3d 340, 341-342 (8th Cir. 1997)*. In order to establish a prima facie case of pregnancy discrimination, Plaintiff must show that (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 765 (8th Cir. 2014). Should the plaintiff succeed in making a prima facie case, "it then falls to the employer to promulgate a non-discriminatory, legitimate justification for its conduct, which rebuts the employee's prima facie case." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001).

If the defendant successfully rebuts the presumption of discrimination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were instead a pretext for discrimination. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256. To do so, the plaintiff must either: (1) persuade the court that a discriminatory reason more likely motivated the employer, or (2) show that the employer's proffered explanation is unworthy of credence. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804-805). The plaintiff must provide evidence that does more than raise doubts about

the wisdom and fairness of the employer's actions; instead, she must create a real question as to the genuineness of the employer's perceptions and beliefs. *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019) (quoting *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018)).   A plaintiff can only succeed at this stage if she presents sufficient evidence to demonstrate *both* that the employer's articulated reason for the adverse employment action was false, *and* that discrimination was the real reason.   *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998)).   Finally, "the ultimate burden of persuading the trier of fact that a defendant intentionally discriminated against a plaintiff remains at all times with the plaintiff."   *Id.* (citing *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978)).

The Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107, is analyzed under the same legal framework as claims brought under Title VII of the Civil Rights Act of 1964.   *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 787 (8th Cir. 2011).

### 2.   Plaintiff Cannot Make a Prima Facie Claim Under Title VII Because There Was No Adverse Employment Action; Plaintiff Stopped Attending Work and Therefore Voluntarily Quit.

Plaintiff cannot prove an essential element required of a prima facie case—that she suffered an adverse employment action. Plaintiff stopped appearing for work as of February 25, 2019. The evidence is undisputed that Plaintiff did not work after February 25, 2019.   Plaintiff's text messages to her supervisor clearly show that on March 4, 2019, a week after she stopped reporting to work, she was not sure if she still had a job because of her unexcused absences, expecting she had either been fired or would be receiving a write-up.   *See* Ex. 7.   On that same day, while still not reporting to work, she submitted a note from her physician via text message attesting to her need for leave through March 11, 2019.   *Id.*   This is undisputedly the first notice that Plaintiff ever gave to PCSSD about her medical condition, and it was a week after she had stopped coming

to work without notice and was thereafter listed as no longer employed by PCSSD.   Plaintiff admits that she did not discuss her medical condition with PCSSD until she attempted to return to work on March 25, 2019, weeks after she simply stopped working.   *See* Compl. at ¶ 69.

Plaintiff loses any protections under Title VII because she failed to report to work, without notice or reason, on February 25, 2019.   *See Thomson v. Olson*, 866 F. Supp. 1267, 1273 (D.N.D. 1994) (dismissing plaintiff's retaliation claim for acts that occurred after Plaintiff stopped appearing for work).   Plaintiff was not terminated when she became a no-call/no-show and has not produced any documentation to show otherwise.   Plaintiff admits that she did not discuss her medical condition with any supervisor at PCSSD until well after she had stopped reporting to work. An "adverse employment action" is defined under 38 U.S.C.S. 4311 as a tangible change in working conditions that produces a material employment disadvantage such as termination, cuts in pay or benefits, or changes that affect an employee's future career prospects, but not minor changes in duties or working conditions, even unpalatable or unwelcome ones.   *Lisdahl v. Mayo Found.*, 633 F.3d 712, 715 (8th Cir. 2011).   Plaintiff voluntarily quit her temporary position at PCSSD.

Furthermore, Plaintiff has provided no evidence of constructive discharge.   Under Title VII, a constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit.   *See Trierweiler v. Wells Fargo Bank,* 639 F.3d 456, 460 (8th Cir. 2011).   An employee is not constructively discharged if she "quits without giving [her] employer a reasonable chance to work out a problem."   *Brenneman v. Famous Dave's of Am., Inc*., 507 F.3d 1139, 1144 (8th Cir. 2007). The evidence is undisputed that Plaintiff did not appear for work after February 25, 2019 and did not give PCSSD any notice of needed medical leave until March 4, 2019, after PCSSD had already considered Plaintiff to have quit.

Here, Plaintiff has not shown intolerable conditions.   The employee's decision was not based on a "reasonable" decision to quit, as the Plaintiff simply stopped showing up to work. Additionally, Plaintiff did not allow the District an opportunity to resolve the issue.   The Plaintiff simply stopped coming to work after February 25, 2019.

### 3.   Plaintiff Cannot Make a Prima Facie Claim Under Title VII Because She Cannot Present Circumstances Giving Rise To An Inference of Discrimination

The fourth element of a prima facie case in an unlawful termination matter requires that Plaintiff prove that similarly situated employees outside the protected class were treated differently.   *See Martinez v. W.W. Grainger, Inc.,* 664 F.3d 225, 230 (8th Cir. 2011).   Plaintiff has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to her by a preponderance of the evidence.   *See Harvey v. Anheuser-Busch, Inc*., 38 F.3d 968, 972 (8th Cir. 1994).   Specifically, the individuals used for comparison must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.   *See Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487-88 (8th Cir. 1998).

Plaintiff has presented no evidence of any similarly situated employee.   Indeed, Plaintiff cannot make such a showing, because no other employee has her history of poor attendance and failing to notify supervisors of extended absences.   For this reason, Plaintiff fails to meet her burden of proving a prima facie case of discrimination.

### B.  PCSSD Did Not Discriminate Against Plaintiff in Violation of ADA When It No Longer Requested Her Employment Services

### 1.  ADA Standard

To establish a prima facie claim for discrimination under the Americans with Disabilities Act, a plaintiff first must show that she has a disability as that term is defined by the ADA, that

she is qualified to perform the essential functions of her job with or without reasonable accommodation, and that she suffered an adverse employment action because of her disability. *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 871 (8th Cir. 1998).   The term *reasonable accommodation* refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of her job. *Aubrey v. Koppes*, 975 F.3d 995, 1000 (10th Cir. 2020) (emphasis added).

The ADA provides that a reasonable accommodation may include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.  *See Id.*; *see also* 42 U.S.C. § 12111(9).

>    2.   **Plaintiff Cannot Make a Prima Facie Case Under ADA Because Plaintiff Cannot Show She Suffered an Adverse Employment Action.**

Plaintiff voluntarily quit her position with PCSSD and was not terminated.    For the same reasons Plaintiff's Title VII claim fails, her ADA claim must fail as well.

>    3.   **Even Assuming Plaintiff Can Make a Prima Facie Case Under ADA, Plaintiff Still Cannot Prove PCSSD Failed to Reasonably Accommodate Plaintiff.**

The thrust of Plaintiff's ADA argument is that when she returned to her job site on March 25, 2019, she was told that she had been terminated, and PCSSD did not engage in the interactive process with her.  *See* Compl. at ¶ 25.  Plaintiff admits it was March 25, 2019 when she returned to her job site and discussed her medical issues with PCSSD supervisors.   Plaintiff

admits that she had not notified anyone at PCSSD of her medical issues prior to February 25, 2019, which is the last day she worked before her extended no-call/no-show.

To show that an employer did not engage in an interactive process, the employee must prove:

> 1) the employer knew about the employee's disability;
> 2) the employee requested accommodations or assistance for his or her disability;
> 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and
> 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009).

By Plaintiff's own admission, she only provided notice of her disability to PCSSD on March 25, 2022.  PCSSD did not even know Plaintiff was seeking medical treatment until March 4, 2019, after Plaintiff had already been a no-call/ no-show for a week.  Ex. 7.  Still, as of March 4, the details of Plaintiff's condition or what accommodations were needed were not known, and it is the employee's responsibility to initiate the interactive process.  *See EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir. 2007) (the interactive process under ADA must be initiated by the disabled employee.").  Instead, Plaintiff waited to discuss her disability until after PCSSD had already considered her no longer employed, which occurred only after she was a no-call/no show.  This sequence of events simply does not support an ADA claim.  *See Schaffhauser v. United Parcel Serv.*, 2014 U.S. Dist. LEXIS 5600, 2014 WL 197684, at *1, *10 (E.D. Ark. Jan. 15, 2014) (liability is not established where "an employee engages in misconduct, learns of an impending adverse employment action, and then informs his employer of a disability that is the supposed cause of the prior misconduct and requests an accommodation."); *see also Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the

first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late'); and *Halpern v. Wake Forest Univ. Health Scis*., 669 F.3d 454, 465 (4th Cir. 2012) ("[T]he law does not require the [defendant] to ignore misconduct that has occurred because the [claimant] subsequently asserts it was the result of a disability"); and *Davila v. Qwest Corp*., 113 Fed. Appx. 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA").

Plaintiff did not request accommodation or notify PCSSD of the relevant details of her disability until after she decided not to report to work for an entire week.   For this reason, she is not entitled to relief under the ADA.

**C. The District Had Legitimate, Non-Discriminatory Reasons For Not Continuing To Employ Plaintiff, and Those Reasons Were Not Pretextual.**

For the reasons discussed at length in this brief, the District had legitimate non-discriminatory reasons for considering Plaintiff as no longer employed on February 25, 2019. PCSSD has presented uncontroverted evidence of Plaintiff's poor attendance in her short time as a temporary employee.   Good attendance is an expectation of PCSSD employees.   *See* Affidavit of Shawn Burgess and *Greer v. Emerson Elec. Co*., 185 F.3d 917, 921 (8th Cir. 1999) ("Regular and reliable attendance is a necessary element of most jobs."); *Pickens v. Soo Line R.R. Co*., 264 F.3d 773, 777 (8th Cir. 2001) (An employee who does not show for work cannot perform the essential functions of the job); *Thompson v. Olsten Kimberly Qualitycare*, 33 F. Supp. 2d 806, 814 (D. Minn. 1999); and *see also Hudson v. Tyson Fresh Meats, Inc*., No. 12-CV-2079-LRR, 2014 U.S. Dist. LEXIS 24714, at *45 (N.D. Iowa Feb. 26, 2014) and *Cloke v. Federal-Mogul Ignition Co*., 2019 U.S. Dist. LEXIS 146070, 2019 WL 3976324, at *8 (S.D. Iowa May 21, 2019) (no-call/no-show grounds for termination).

In order to prove that PCSSD's motivation in determining that Plaintiff had quit was pretextual, Plaintiff must present evidence that other employees were disciplined less severely for the same conduct can be sufficient proof of pretext. *See Lynn v. Deaconess Medical Center West*, 160 F.3d 484, 1998 WL 792468 (8th Cir. 1998).    Plaintiff has not – and indeed, cannot – present such comparative employees.    Plaintiff was hired for a temporary position.    Plaintiff was not terminated, but she ceded her right to continued temporary employment when she failed to report to work and did not give notice as to why she was not at work or when she might return to work. These circumstances led the District to rightly assumed she had quit.    There is simply no evidence that the District discriminated against Plaintiff.

## IV.   CONCLUSION

Based upon the foregoing argument and authority, the District respectfully submits that its Motion for Summary Judgment should be granted, and that Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com

By:   **Cody Kees**
         Jay Bequette, Ark. Bar #87012
         Cody Kees, Ark. Bar #2012118

*Attorneys for Defendant*