IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**LAVETTA STEVESON**                                                          **PLAINTIFF**

vs.                                    No. 4:20-cv-1357-JM

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                    **DEFENDANT**

## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

The Motion for Summary Judgment filed by Defendant (ECF No. 10) must be
denied because Plaintiff has presented a genuine question of material fact for every issue
raised by Defendant. More specifically, Plaintiff has provided evidence that Defendant
terminated her employment because her pregnancy made her a "liability" in her particular
position. Defendant's claims that Plaintiff's "temporary" status somehow means that Title
VII protections do not apply is based on what can only be construed as a willful
misinterpretation of both the facts of this case and the relevant law. Because Plaintiff has
demonstrated that a genuine issue exists for every fact raised by Defendant, Defendant
has not met its burden on summary judgment and its Motion must be denied.

### II.     STATEMENT OF FACTS

Plaintiff was hired by Defendant as a security guard in September of 2018. Decl.
of Lavetta Steveson ("Decl. Steveson") ¶ 3, attached as Ex. 1. Plaintiff was hired as an
"at-will" employee, meaning that she was not under contract with Defendant, would only
be paid for the hours she worked, and would not receive benefits. *Id*. at ¶ 5. See also
Dep. of Shawn Burgess ("Dep. Burgess") 30:2–8, attached as Ex. 2. Plaintiff worked a

regular schedule for Defendant, working Monday through Friday from 7:30 am to 4:00 pm at Mills Middle School and Mills High School. Decl. Steveson ¶ 6. As a security guard, Plaintiff's primary responsibilities included greeting and aiding school visitors and monitoring students in the communal areas such as hallways, restroom, and the car pickup and drop-off lines. *Id*. at ¶ 4.

In February of 2019, Plaintiff discovered that she as pregnant. *Id*. at ¶ 9. Plaintiff informed both of her direct supervisors, Thomas Ward ("Mr. Ward") and Tracy Bunting ("Ms. Bunting"), of her condition. *Id*. Plaintiff requested that she not be required to fill the position that required to her to break up fights between students, but instead work in the school office in the position that greets and checks in visitors to the school for the duration of her pregnancy. *Id*.

On February 25, 2019, Plaintiff performed her duties as usual. *Id*. at ¶ 10. That evening, Plaintiff experienced some unusual pregnancy symptoms and visited the emergency room. *Id*. Plaintiff was hospitalized briefly but was discharged on ordered bedrest and a requirement that she make an immediate appointment with her primary OB/GYN to confirm the diagnosis and prescribe any follow-up treatments. *Id*. Plaintiff called Mr. Ward on the day she was hospitalized to inform him of her condition and that she would not be able to work until she had seen her primary OB/GYN and received further instructions and follow-up. *Id*. When she was discharged, she followed up this conversation with a text, letting Mr. Ward know that she planned to return to work by the following Monday, March 4. *Id. See also* Feb. 28, 2019, Text Message, attached as Ex. 5. Plaintiff likewise texted Ms. Bunting to check on the status of her position but did not receive a response. Mar. 4, 2019, Text Message, attached as Ex. 4.

By March 4, Plaintiff had visited her primary OB/GYN and received instructions that she remain on bedrest through March 11, 2019. Decl. Steveson ¶ 11. Plaintiff immediately sent the doctor's note regarding these instructions to Ms. Bunting. *Id. See also* Mar. 4, 2019, Text Message, attached as Ex. 4. Plaintiff's doctor extended her bedrest two more times, first through March 14, then again through March 18. Decl. Steveson ¶ 12. Plaintiff texted the doctor's note to her supervisors each time her bedrest was extended. *Id. See also* Mar. 14, 2019, Text Message, attached as Ex. 6. After the bedrest extension through March 14, Dave Thomas, one of Defendant's two heads of the security department, informed Plaintiff that she would be required to return to work or else Defendant would look for a replacement. Decl. Steveson ¶ 12.

Ultimately, Plaintiff was cleared to work on March 18. *Id.* at ¶ 11; *see also* Mar. 11, 2019, Doctor's Note, attached as Ex. 7. The week of March 18, 2019, however, was Defendant's Spring Break and no security services were needed. Decl. Steveson ¶ 12. On March 25, the Monday following Spring Break, Plaintiff texted Mr. Thomas and his secretary to see if her position had been filled or if she was able to return to work. *Id.* at ¶ 13; Mar. 25, 2019, Text Message, attached as Ex. 8. When Plaintiff did not receive an answer, she went to work as usual. Decl. Steveson ¶ 14. Upon her arrival, Mr. Thomas informed Plaintiff that she had not provided adequate documentation to excuse her absences. Id. When Plaintiff provided the doctors' notes and proof that she had sent those notes to her supervisors, Mr. Thomas told Plaintiff that she no longer had a job because her pregnancy made her a "liability," and she was "too much of a risk" to employ. *Id. See also* Mar. 25, 2019, Text Message, attached as Ex. 9. Plaintiff specifically remembers that

Mr. Thomas used the phrase "we should let nature take its course" with regards to Plaintiff's condition and availability to work. Decl. Steveson ¶ 14.

### III.    STANDARD OF REVIEW

Summary judgment is proper only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996) (citing Fed. R. Civ. P. 56(c)).  "The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.*  Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Eastman v. United States*, No. 06-CV-1069, 2009 U.S. Dist. LEXIS 73415, at *4 (W.D. Ark. Aug. 19, 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, (1986)).

In deciding whether there is sufficient evidence favoring the nonmoving party, "the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party." *Id.* (citing *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006)). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson*, 477 U.S. at 255).

Notably, "summary judgment summary judgment should seldom be used in discrimination cases." *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 486–87 (8th Cir. 1998) (citing *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)). "Because such cases often depend on inferences rather than on direct evidence,

summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Id.* (citing *Crawford*, 37 F.3d at 1341).

## IV.   ARGUMENT

Defendant's ace-in-the-hole is that Plaintiff was an "at-will" or "temporary" employee whom Defendant could determine was no longer needed at any time. Through a series of logical missteps, Defendant contorts the facts such that, by Defendant's reasoning, Title VII and ADA protections do not apply to these "temporary" employees because they could simply leave their employment without notice to Defendant.  This is not so. Despite her "temporary" status, Plaintiff was entitled to every bit of protection offered by Title VII, and her rights were violated by Defendant's termination based on her protected status. *See* Section A, *infra*. On the other hand, Defendant also asserts that Plaintiff's poor attendance was the impetus behind its "considering Plaintiff as no longer employed," but this reason is mere pretext. While Defendant uses careful language to retroactively cover itself, the facts in this case are clear—Defendant fired Plaintiff once she returned to work from bedrest because her pregnancy made her "a liability." *See* Section B, *infra*.

### A.   Plaintiff was fired in violation of Title VII and ADA protections.

Defendant's Motion for Summary Judgment is rife with contradictions—Defendant alleges that it "No Longer Requested [Plaintiff's] Employment Services," while simultaneously asserting that Plaintiff "Voluntarily Quit" her position. Mem. Br. in Supp. of Def.'s Mot. for Summ. J., p. 4, 6, ECF No. 11. Despite Defendant's convoluted arguments, and regardless of Plaintiff's "temporary" status, Plaintiff was entitled to protection under

Title VII and the ADA throughout her employment with Defendant and is protected from discrimination by Defendant based on her protected status.

1. <u>Plaintiff was protected under Title VII.</u>

Title VII declares it unlawful for an employer to discharge or otherwise discriminate with respect to compensation, terms, conditions, or privileges of employment because of sex. 42 U.S.C. § 2000e-2. The Pregnancy Discrimination Act amended Title VII to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). To succeed on a Title VII pregnancy discrimination claim, an employee must show that she was treated differently because of her pregnancy or pregnancy related condition.

An employee can prove her case under the Pregnancy Discrimination Act in two ways. First, an employee can produce "direct evidence of discrimination—that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 878 (8th Cir. 2010) (quoting *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009)).

Alternatively, an employee alleging pregnancy discrimination may establish a *prima facie* case of sex discrimination by showing that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful sex discrimination. *Fiero v. CSG Systems*, Inc., 759 F.3d 874, 878 (8th Cir. 2014). After an employee establishes a *prima facie* case, the burden then shifts to the employer to "offer legitimate,

non-retaliatory reasons for the alleged retaliatory action." *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 740 (8th Cir. 2017). The burden then shifts back to the employee to show that the employer's reasons were pretext for retaliation. *Id.* Pretext can be shown by discrediting the employer's reasons for their alleged retaliatory actions and showing how the circumstances "permit drawing a reasonable inference that retaliation was the real reason for the adverse employment action." *Hutton v. Maynard*, 812 F.3d 679, 684 (8th Cir. 2016). Moreover, the Eighth Circuit has made it clear that even if an employer had some motives that may have been legitimate in dismissing an employee, an employer can still be held liable when a plaintiff can establish that pregnancy or a pregnancy-related condition was a motivating factor for her termination. *Deneen v. Nw. Airlines*, 132 F.3d 431, 435 (8th Cir. 1998).

Under the Americans with Disabilities Act (ADA), it is unlawful for an employer to discriminate against an employee on the basis of disability. 42 U.S.C. §12101. To succeed in a claim of disability discrimination, an employee must demonstrate that 1) she is a qualified individual with a disability; 2) that she was qualified to perform the essential duties of the job with reasonable accommodations; and 3) that she suffered adverse employment action as a result of her disability. *Cleveland v. Fed. Express Corp.* 83 Fed. Appx. 74, 78 (6th Cir. 2003). Once an employee makes a *prima facie* case showing that she was a disabled individual who was qualified for the position with reasonable accommodation, the burden shifts to the employer to show that the accommodation imposed an undue hardship on the operation of its business. 42 U.S.C. § 12101.

Generally, the ADA defines a person with a disability as someone who has a condition that substantially limits one or more major life activity, has a record of such

impairment, or is regarded as having such an impairment. 42 U.S.C. § 12101.  While a healthy pregnancy does not constitute a disability under the ADA, complications arising from pregnancy that limit a major life activity (including work) can qualify as a disability. *Cerrato v. Durham*, 941 F. Supp. 388, 392–93 (S.D.N.Y. 1996). Specifically, courts have acknowledged that conditions such as persistent back pain, nausea, bleeding, preeclampsia, and risk to the fetus all constitute temporary disability. *Id.*

In the Eighth Circuit, whether an accommodation is reasonable or constitutes undue hardship predicated on the type of accommodation requested and the employer's efforts to work with the employee to accommodate her disability. The Eighth Circuit applies a four-part test for an employee to show that she was denied a reasonable accommodation: 1) that the employer knew about the employee's disability; 2) that the employee requested accommodations for her disability; 3) that the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) that the employee could have reasonably been accommodated absent the employer's lack of good faith. *Hopman v. Union Pac. R.R.*, 462 F. Supp. 3d 913, 923–24 (E.D. Ark. 2020). Where the employer cannot show undue hardship arising from the employee's accommodation, the plaintiff must show that the adverse employment action taken against her was causally related to her disability or perceived disability. *Brown v. City of Jacksonville*, 711 F.3d 883, 889-890 (8th. Cir. 2013).

2. <u>Plaintiff was terminated due to her protected status</u>.

Through a series of logical leaps, Defendant argues that because Plaintiff was a "temporary" employee, her absence from work for a week constituted an "abandonment" of her position and she cannot prove any adverse employment action because she

effectively quit before she could be terminated. Defendant's facts lack any basis in reality—not only did Plaintiff communicate with her supervisors regarding her medical conditions and status, not once in all of those communications did any of Defendant's agents inform her that Defendant "considered her no longer employed."

At the outset, it is worth noting that Plaintiff's "temporary" status is a red-herring and has no bearing on the facts of this case. Defendant uses word "temporary" to describe employees who are at-will, non-contract employees who are hired on an as needed basis. Dep. Burgess 30:2–8. *See also*, Defendant's Statement of Undisputed Fact ¶ 5, ECF No. 12. Some of these employees are hired for a discreet amount of time, such as substitute teachers filling in for teachers on extended leave, and some are hired indefinitely with the understanding that they will no longer report to work if the need for someone in that position is eliminated. Dep. Burgess 47:8–25. Plaintiff's position was the former—she was hired as a "temporary" security officer with the understanding that she would provide security services to Defendant's schools indefinitely. Decl. Steveson ¶ 5. Thus, there is no dispute that Plaintiff was an employee who was entitled to Title VII protections.

While true that temporary employees were not subject to the same attendance requirements as contract employees, regular attendance was an expectation and Plaintiff was required to inform her direct supervisors if she would be absent from work on a certain day. Decl. Steveson ¶ 7; see also Dep. Burgess 34:7–35:20. Throughout her employment, Plaintiff followed Defendant's protocols regarding absences to the letter. Prior to her hospitalization, Plaintiff only missed work once in February of 2019. Decl. Steveson ¶ 8. In fact, Plaintiff never received any sort of disciplinary action due to absenteeism, despite Defendant's progressive discipline policy that requires a verbal

warning followed by a write-up from Plaintiff's direct supervisors. *Id.*; *see also* Dep. Burgess 28:5–14; 29:9–25.

Defendant argues that Plaintiff's temporary status made it possible, even permissible, for her to simply not show up for work for an entire week after 18 months of employment and Defendant's policy was to simply "consider her no longer employed." This is, of course, ludicrous. No employer would be so negligent that it would fail to check on an employee who failed to show up for an entire week. Moreover, if Plaintiff's position were so unnecessary that Defendant had no need for someone to fill it for an entire week, then Defendant would have let Plaintiff go well before her "extended absence" became an issue. The facts of this case provide a more reasonable conclusion: Defendant did not fill Plaintiff's position or even check on Plaintiff's status for an entire week because Plaintiff notified Defendant that she was ill and that she would be returning as soon as she was cleared to work. *See* Decl. Steveson ¶ 10.

In fact, throughout Plaintiff's medical ordeal, she was in constant communication with her direct supervisors. Indeed, she was even in communication with Mr. Thomas, who was her supervisors' supervisor. Plaintiff notified Mr. Ward that she would be on bedrest on the day she was hospitalized. Decl. Steveson ¶ 10. Plaintiff's documentary evidence supports—her text messages to Mr. Ward on February 28 show that Mr. Ward checked in to ensure that Plaintiff was planning to return to work and Plaintiff informed him that she hoped to return on March 4. Feb. 28, 2019, Text Message, attached as Ex. 5. Further, the evidence clearly shows that Plaintiff kept her supervisors abreast of her working condition as she received updates from her physician. *See* Mar. 4, 2019, Text Message, attached as Ex. 4; Mar. 14, 2019, Text Message, attached as Ex. 6.

Throughout all of this back-and-forth, not once did any of Plaintiff's supervisors inform her that she was no longer employed by Defendant. While Mr. Thomas informed Plaintiff that she *might* be replaced if she did not return to work, Plaintiff's position had not been filled by the time she was cleared to return. Decl. Steveson ¶ 12. It was only when Plaintiff actually showed up to begin working again that she was informed that she no longer had a job. *Id.* at ¶ 14.

It is Defendant's position that Plaintiff's first contact with Defendant was after a week of absences, but the record evidence blatantly belies that assertion. *See* Feb. 28, 2019, Text Message, attached as Ex. 5. Moreover, even if Plaintiff had been absent for a week with no communication, when she began texting her supervisors again on March 4, clearly checking on the status of her job, nobody informed her that she need not bother returning because the assumption was that she had quit. *See, e.g.*, Mar. 4, 2019, Text Message, attached as Ex. 3; March 4, 2019, Text Message, attached as Ex. 4; Mar. 14, 2019, Text Message, attached as Ex. 6. Rather, Defendant ignored Plaintiff's texts and waited for her to return to work before informing her that she no longer had a job because her pregnancy was "too much of a risk" in her position. Decl. Steveson ¶ 14. Plaintiff was very clearly fired, and she was very clearly fired because she was pregnant. Defendant did not disguise its reasons for her termination—Mr. Thomas very specifically told Plaintiff that she was a liability. Decl. Steveson ¶ 14.

Finally, Defendant's failure to accommodate Plaintiff's disability is further evidence of its discriminatory intent in terminating her employment. Before she was hospitalized, out of an abundance of caution, Plaintiff requested "light duty" responsibilities even though she did not anticipate that her pregnancy would cause difficulties in performing

her regular job duties. Decl. Steveson ¶ 9. Defendant was aware of Plaintiff's condition, and there is no evidence that limiting Plaintiff's responsibilities would have been unreasonable or an undue hardship for Defendant. In fact, the evidence supports that Defendant has a policy structure that allows for "light duty" responsibilities. *See* Mar. 27, 2019, Text Message, attached as Ex. 10. Defendant's refusal to even engage in a discussion in which Plaintiff's disability could be accommodated violated the ADA.

Plaintiff has clearly made a *prima facie* showing of discrimination under Title VII and the ADA. At the very least, Defendant has not met its burden to show that no reasonable minds could disagree regarding whether Plaintiff was terminated or voluntarily quit. Because a reasonable jury could find that Plaintiff's termination was an adverse employment action based on her protected status, Defendant's Motion for Summary Judgment must be denied.

**B. Defendant's reasons for terminating Plaintiff are pretextual.**

In an effort to cover itself on the backend, Defendant now asserts that Plaintiff had a "history of poor attendance," which was its reason for "Not Continuing to Employ Plaintiff." Mem. Br. in Supp. of Mot. for Summ. J., p. 8, 11. Stripped of the careful phrasing, Defendant is claiming that it fired Plaintiff because she was frequently absent without notifying her supervisors. The documentary evidence disproves this assertion.

Defendant itself acknowledges that at-will employees are permitted to simply notify their supervisors when they will be absent. Dep. Burgess 34:7–35:2; 36:18–37:5. Plaintiff's evidence demonstrates that she regularly informed her supervisors when she would miss work for various reasons in accordance with Defendant's policies. *See, e.g.*, Feb. 13 Text Message, attached as Ex. 11; Feb. 8, 15 Text Messages, attached as Ex.

12; Mar. 1 Text Message, attached as Ex. 13. Further, Defendant has provided no evidence to support its assertion that Plaintiff had a poor attendance history. Defendant has provided no time records that show demonstrate poor attendance, nor has Defendant provided any evidence that Plaintiff was ever disciplined for absenteeism.

Defendant's policy regarding discipline, including non-appearance or tardiness, is to evaluate the employee through progressive discipline. Decl. Steveson ¶ 8; Dep. Burgess 28:5–14. The first step in this discipline process is a conversation between the employee and his or her supervisor. Dep. Burgess 28:5–14. Defendant's policy is to "support the employee in an effort to recover and to help them make better choices pertaining to their job responsibilities." *Id.* at 29:11–12. Plaintiff was never admonished or written up regarding absenteeism or tardiness. Decl. Steveson ¶ 8. Thus, Defendant did not follow its own policy on progressive discipline with respect to Plaintiff's extended "nonappearance," and is only claiming Plaintiff had poor attendance now to avoid a finding of discriminatory intent when Defendant terminated Plaintiff's employment.

Defendant has offered no proof regarding Plaintiff's attendance while Plaintiff has offered evidence showing that she followed Defendant's attendance policies to the letter. A reasonable jury could determine that Defendant's post hoc reasons for Plaintiff's termination are mere pretext. Defendant fired Plaintiff for the reasons stated when she was fired—Plaintiff's pregnancy made her a "liability" in her position. Defendant has therefore not met its burden on summary judgment and its Motion must be denied.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court to deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

**PLAINTIFF LAVETTA STEVESON**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

April Rhéaume
Ark. Bar No. 2015208
april@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com