# Transcript of the Testimony of

# Shawn Burgess

**Date:** July 21, 2021

**Case:** Lavetta Stevenson v. Pulaski County Special School District

**Bushman Court Reporting**
Ashley Telaga
Phone: (501) 372-5115
Fax: (501) 378-0077

IN THE UNITED STATES DISTRICT COURT OF EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LAVETTA STEVESON                                              PLAINTIFF

VS.                           NO. 4:20-cv-1357-JM

PULASKI COUNTY SPECIAL SCHOOL DISTRICT                        DEFENDANT

ORAL DEPOSITION

OF

SHAWN BURGESS

TAKEN July 21, 2021, AT 11:03 A.M.

Bushman Court Reporting

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

MS. APRIL RHEAUME

SANFORD LAW FIRM, PLLC

KIRKPATRICK PLAZA

10800 FINANCIAL CENTRE PKWY, SUITE 510

LITTLE ROCK, ARKANSAS 72211

(800) 615-4946

april@sanfordlawfirm.com


ON BEHALF OF THE DEFENDANT:

MR. CODY KEES

BEQUETTE, BILLINGSLEY & KEES, P.A.

425 WEST CAPITOL AVENUE, SUITE 3200

LITTLE ROCK, ARKANSAS 72201-3469

(501) 374-1107

ckees@bbpalalw.com

Page 3

I N D E X

STYLE AND NUMBER . . . . . . . . . . . . . . . . . . . . . . . 1

APPEARANCES . . . . . . . . . . . . . . . . . . . . . . . . . 2

STIPULATION PAGE . . . . . . . . . . . . . . . . . . . . . . . 4

WITNESS:  SHAWN BURGESS

    Examination by MS. APRIL RHEAUME . . . . . . . . . . . . 5

    Deposition Concluded  . . . . . . . . . . . . . . . . . 52

COURT REPORTER'S CERTIFICATE . . . . . . . . . . . . . . . . 53


EXHIBITS:                                                IDENTIFIED:


1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Page 4

1              C A P T I O N

2      ANSWERS AND ORAL DEPOSITION OF SHAWN BURGESS, a witness

3   produced at the request of the Plaintiff, taken in the above-

4   styled and numbered cause on the 21st day of July, 2021, at

5   11:03 a.m., via Zoom in Arkansas, pursuant to the Federal Rules

6   of Civil Procedure.

1   transferring employees to other positions?

2   **A     Yes, there is.**

3   Q     Does -- does that policy include having to have open

4   hiring to anyone as well, or is it possible -- and tell me if

5   it's a bad question -- or is it possible for someone to just be

6   moved into a location without opening it up?

7   **A     Both.  Both, but there is a policy on -- what you're**

8   **referencing is promotion and transfer.  That's the name of that**

9   **particular policy.  And, so, again, it kind of outlines what**

10  **those steps are, however, the superintendent always -- there's**

11  **a policy in there about a superintendent's transfer as well and**

12  **that he has the autonomy to transfer anyone in the district to**

13  **do other positions, so both happens.**

14  Q     Thank you.  Do you have a policy or -- no.  A better

15  question, who performs performance reviews for employees?

16  **A     Their supervisors.**

17  Q     How often are they done?

18  **A     Yearly.**

19

20              MS. RHEAUME:  I'd like to have a

21          five-minute break if that's all right with

22          everyone.

23              THE WITNESS:  Okay.

24              MS. RHEAUME:  Is everyone good with that?

25          Can we go off the record?

Shawn Burgess 7/21/2021                                    Lavetta Stevenson v. Pulaski County Special School District

Page 28

1              THE COURT REPORTER:  Yes.
2              (BREAK TAKEN)
3
4    BY MS. RHEAUME:
5    Q    All right.  Can you please tell me what your discipline
6    policy is?
7    **A    We utilize progressive discipline, and that's also in the**
8    **policies.  Of course, we take a look at what the infraction is,**
9    **and we go from there.  Some things are so egregious, of course,**
10   **that it goes directly to recommendation for termination.**
11   **However, if it's not an egregious act, then it's progressive,**
12   **you know, just basic conversations, you know, just kind of goes**
13   **from there, then reduced to writing, et cetera, et cetera, so,**
14   **yeah.**
15   Q    What kind of training do your supervisors get on that
16   policy?
17   **A    We have done it several different ways.  That's typically**
18   **a part of our beginning of the year, the meeting I'm**
19   **referencing for next week.  There are sometimes, depending on**
20   **the number of new administrators, that we will bring in Mr.**
21   **Beckett and Mr. Kees to actually do it from the legal**
22   **perspective, as we call it, pretty much documentation of**
23   **termination, something to that effect.  They always have some**
24   **type of thing to it.  And then if it's not, like this year, we**
25   **don't have a lot of new admin, then we will just go back**

1   (inaudible).  Okay.  So we will just reference the policies,
2   take them through steps.  Mr. Beckett and Mr. Kees have
3   definitely supported us in this process, and we give the
4   administrators -- a couple of years ago, they created -- helped
5   us create templates for documentation, so we always share that.
6   That's in all of the presentations, pretty much, where we
7   reference to go back to your template, so they will have -- be
8   consistent as it relates to documenting any infraction.
9   Q   And the progressive discipline policy is utilized as part
10  of your termination policy as well?
11  A   Yes.  We must show that we have tried to support the
12  employee in an effort to recover and to help them make better
13  choices pertaining to their job responsibilities.  And then, if
14  not, then we go to the next steps for that employee.  But yes,
15  we make every effort to support them in doing something
16  different and making the right choices.
17  Q   And can immediate supervisors terminate their employees
18  without a progressive discipline history?
19  A   Well, it depends.  My first answer will be no.  Number 1,
20  no one can terminate except our school board, so a supervisor
21  can recommend termination.  In that process, they would work
22  with their direct supervisor, and then they would contact HR.
23  We will look to see if there's enough evidence in an effort to
24  even recommend it to the board, so it doesn't automatically go
25  from a supervisor to termination.  Okay.

Page 33

1  **But some people tell me, I just want somebody to hear me. You**
2  **know, Can you listen to what's going on and can you help me?**
3  **And then if it's that stance, then that's what I do.**
4  Q    I would like to go back to the complaint mechanism,
5  because I think you were talking top down. I'm interested in
6  who the employee is supposed to tell first.
7  **A    Their immediate supervisor. We --**
8  Q    And is your immediate supervisor required to report this
9  to anyone?
10 **A    It depends on what they are actually complaining about,**
11 **because we do have a grievance policy as well. So if it's**
12 **something that is not -- that the employee is unhappy about or**
13 **they disagree with, they can go through the grievance process**
14 **as well.**
15 Q    And --
16 **A    It starts with their supervisor, and then it progresses**
17 **up. So if they don't -- they don't necessarily agree with what**
18 **their supervisor says, then that it goes to the next person.**
19 **Then it could go to the superintendent, then it can end up at**
20 **the board, so it just depends on what it is.**
21 Q    Let's go back to that, because I'm interested -- if the
22 next person after the supervisor -- who is the next person?
23 **A    That's what we call a level two grievance, because a level**
24 **one starts with the supervisor. And a level two is the**
25 **superintendent's designee, and it typically is someone here in**

Page 34

1   central office or someone who has working knowledge of what,
2   you know, the grievance is about.  If it's something
3   curriculum, then it goes to someone that deals more with the
4   curriculum.  If it's something in the operations or
5   maintenance, then it goes to someone in that area that can look
6   at what the complaint is and (indiscernible).
7   Q    If someone is sick or needs some time off, an employee,
8   who are they supposed to tell?
9   A    They tell their immediate supervisor.
10  Q    Is the immediate supervisor supposed to keep a record of
11  this?
12  A    Yes.  However, it depends on what type of employee they
13  are, because if they are a contracted employee, not only do
14  they talk to their immediate supervisor, but we have a portal
15  that they would enter their absences in.  Any temp employee,
16  these are sub employees, we do not have that portal.  They just
17  -- if they know for certain that this temp or sub is going to
18  work for a week, let's just say that they've been told up
19  front, hey, I need you to work Monday through Friday of the
20  next week, and for some reason they have a sick child or they
21  become sick themselves, they just contact the supervisor,
22  typically, either by text or call or e-mail and say, hey, I
23  know I'm supposed to work all this week; however, I'm sick, and
24  I can't come in, because they are not a contracted employee
25  that has access to the portal that all of the contracted

1   employees have to enter their leave, because they don't have
2   leave.  They only get paid for what they do.
3   Q    So these -- I think I'm a little confused.  So contract
4   employees keep their own time?  The district does not keep
5   their time for them?
6   A    It's a district portal.  So if I needed to be off
7   tomorrow, I would enter that request into what we call
8   Timeclock Plus.  And because I have leave time, because I'm a
9   contracted employee, all contracted employees have accumulated
10  leave time if they haven't utilized it.  So if a person has ten
11  sick days, is what they typically get per year, and I need to
12  use one tomorrow, I'm going to go into Timeclock Plus, request
13  that time off.  I'm also contact Dr. McNulty and say, hey, I've
14  got to be off tomorrow and let him know.
15  The temp or the subs are not in that portal, so they cannot
16  enter themselves into that because they don't have any leave
17  that they've accumulated because they are at-will and they only
18  get paid for what they work.  So that's why they have to
19  contact their supervisors and say, hey, I won't be here
20  tomorrow.
21  Q    So their supervisor keeps their time?
22  A    Yes.  Because when they are a temp or they are a sub, they
23  sign in or clock in.  They do have sometimes a clock in and out
24  badge, and that keeps or captures the time that they have
25  worked.  And then that particular supervisor's secretary or

1    unemployment, and submit it online.  But there are sometimes
2    paper inquiries sent, but mostly now they're online.
3    Q    Are you familiar with Ms. Steveson's unemployment inquiry?
4    A    Not specifically, but I do know that some inquiry was made
5    on her behalf.
6    Q    Okay.  Is the personnel file online?  Is it saved
7    somewhere?  Is it dealt -- okay, this is a really bad question.
8
9    Is Ms. Steveson's personnel file a paper file, or is it
10   something that you can access on the computer?
11   A    It's a paper file.
12   Q    Are the dates when things are added to the file written
13   anywhere on there?
14   A    They are -- they are stamped.
15   Q    Who is permitted to add to the personnel file?
16   A    No one except our office, pretty much.  Now if a employee
17   themselves wanted to maybe put a rebuttal to a disciplinary
18   action, then they could add that to their personnel file, but
19   no one outside of HR typically adds anything to the personnel
20   file.
21   Q    So if a supervisor had a doctor's note, they would simply
22   give it to you, you would stamp it and add it?
23   A    That's correct.
24   Q    Okay.  Thank you.
25   A    That's correct.

1  Q    How does termination work, because I'm sure there's a lot
2  -- well, let me ask this.
3  Is there a lot of paperwork involved in termination?
4  **A    It can be.  Yes.**
5  Q    What kinds of records do you need to create or edit when
6  an individual is terminated?
7  **A    That's -- that's where it comes with the progressive**
8  **discipline and making sure that the employee has been supported**
9  **prior to this happening.  And, so, that's why if, by chance,**
10 **there's a situation where a supervisor feels like that they**
11 **need to recommend termination, they will, even before they meet**
12 **with the employee, they will bring it or call us and say, hey,**
13 **I need for you to take a look at, you know, this particular**
14 **documentation that I've had to see if I have enough to**
15 **recommend termination or do I need to do something different?**
16 **That's if it's not egregious.**
17 **And, so -- and then sometimes we look at it and say, hey, not**
18 **really sure.  Let me shoot it over to the attorneys, and then**
19 **they'll take a look and see if it's something that we need to**
20 **support this employee more on and -- or if it's something that**
21 **we can proceed with.**
22 Q    Are you to able to tell me whether or not your office
23 looked at Ms. Steveson's file and created that inquiry?
24 **A    Well, based on Ms. Steveson's file, she was a temporary**
25 **security officer, so there is not a termination recommendation**

1  for that because that's an at-will position.
2  Q    So the terminations for temp employees only get to your
3  office after the termination happens?  Or do they not go to
4  your office at all?
5  A    Okay.  You're going to have to clarify that one.
6  Q    So when a termination happens for a temporary employee,
7  who gets notice that the termination happened?
8  A    So they're not necessarily terminated, that's what I'm
9  saying, if they stop using them.  Okay.  Let me give you an
10 example, like, even from my office.  I have a person -- I've
11 used persons for filing because, of course, in HR there are
12 lots and lots of papers.  So when the ladies in my office get
13 behind, I will call Jane Doe and say, hey, are you available
14 this week to come up and file for our office?  And they'll say,
15 Yes.  So then I will have that person to come and file.  And
16 then once that person has done the duties that's needed, then
17 I'll say, thank you, and they don't come back -- it's not a
18 termination.  I just use them as needed, and that's the same
19 type of position that Ms. Steveson was providing.  And, so, if
20 I need that person again in another month, I'll call them back
21 and say, hey, can you come back up and help with whatever we
22 have going on in the office?  And they'll work a week or two,
23 and then they go back home or go do whatever they're doing.
24 But it's not a termination.  It's utilizing them in the manner
25 that we need them at that time.

Page 49

1   A    I reviewed her personnel file prior to it.  I mean I saw
2   some information I guess she had submitted to her supervisor or
3   to our office concerning some work notes.  I mean her file is
4   pretty simplistic, because she wasn't -- didn't work much from
5   what I could see.  I don't have her day-to-day, as far as how
6   many days she worked, but I do see where she completed the
7   necessary pieces when she was brought on to be set up for pay.
8   And I saw, like, three doctor's notes, and that's about the
9   extent of her -- it's very thin, so, because she didn't work
10  very much.  And then, of course, the unemployment pieces that
11  we discussed earlier where she filed for unemployment.  That
12  was probably the extent of her personnel file.
13  Q    Okay. Thanks.  Do you have a personal opinion on the
14  merits of this case?
15  A    I don't have a personal opinion.  I have a professional
16  opinion.  My professional opinion is that it was kind of like
17  the scenario I gave you earlier.  The position in which she
18  worked as a temporary security officer was on an as-needed
19  basis, and so -- and that's something that we utilize a lot,
20  based on the needs at the time, like I mentioned the scenario
21  about the COVID, and things of that nature.  So we bring in
22  persons, based on the needs of our students or then needs of
23  the district at the time, and we let them know, I need for you
24  to work a day, three days, five days, a week, whatever.
25  And, so, it's not a termination or discrimination on any

Page 51

1  **employment.**
2  Q   So the doctor's note that Ms. Steveson provided that said
3  that she was able to return to work on March 25th, was that in
4  her personnel file?
5  **A   It is.**
6  Q   And Ms. Steveson showed up for work on March 25th; is that
7  right?
8  **A   I don't know.**
9  Q   You don't know.  Okay.  And Ms. Steveson's father was
10 hired to replace Ms. Steveson; is that right?
11 **A   I don't know that either.**
12             MS. RHEAUME:  I think I'm nearly done here.
13          Can I have 5 to 10 minutes?  Are you all okay
14          with that?
15             THE WITNESS:  Yes.
16             MS. RHEAUME:  All right.  Thanks.
17             (BREAK TAKEN)
18             MS. RHEAUME:  All right.  I just want to be
19          back on the record to say that I do not have
20          any further questions, and I pass it to Mr.
21          Kees, if he wants to do so.
22             MR. KEES:  Yeah.  Can you hear me from
23          here?
24             MS. RHEAUME:  I can.
25             MR. KEES:  I just have one, so if you can

Shawn Burgess 7/21/2021  Lavetta Stevenson v. Pulaski County Special School District

Page 52

1            hear me, this will be fine.
2  CROSS-EXAMINATION
3
4  BY MR. KEES:
5  Q    Ms. Burgess, can Ms. Steveson still work for the district,
6  in some capacity, as we sit here today?
7  **A    Yes, she can.**
8  Q    And has that -- was that the case in 2019?
9  **A    Yes.  There's nothing in her file that tells me that she**
10 **can't.  Nothing.  I mean nothing derogatory at all.**
11
12              MR. KEES:  Okay.  That's all I have.
13         Anything further?
14              MS. RHEAUME:  I don't have anything
15       further.
16              MR. KEES:  Okay, all right.  Do you have
17        anything else for me today?
18              MS. RHEAUME:  Good on my end.
19              MR. KEES:  Okay.
20              THE COURT REPORTER:  I think I'm good too.
21              MS. RHEAUME:  Thank you, everyone, for
22       being here in the middle of the day.
23         (WHEREUPON, the proceedings were concluded in
24       the matter at 12:45 p.m.)
25                   (WITNESS EXCUSED)